IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

NORMA C. COMEAUX,          )     Civ. No. 06-00341 SOM/BMK
                           )
          Plaintiff,       )
                           )     ORDER GRANTING IN PART AND
     vs.                   )     DENYING IN PART DEFENDANT'S
                           )     MOTION FOR SUMMARY JUDGMENT
STATE OF HAWAII, DEPARTMENT )
OF EDUCATION; JOHN DOES 1-10, )
DOE ENTITIES 1-10,         )
                           )
          Defendants.      )
_____ )

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I.     INTRODUCTION.

        Plaintiff Norma C. Comeaux ("Comeaux"), in her Second

Amended Complaint ("SAC") against Defendant State of Hawaii

Department of Education ("the State"), asserts that the State

discriminated against her because of her national origin, in

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e, et seq., as well as Haw. Rev. Stat. §§ 378-1 and -2.

The State seeks summary judgment on Comeaux's numerous claims

under Title VII, arguing that some of the bases are time-barred.

The State also argues that, to the extent Comeaux has timely

Title VII claims, they fail to make out a prima facie case under

Title VII because Comeaux "did not suffer adverse action" and

because the State "had legitimate, non-discriminatory reasons"

for its actions.  The court grants in part and denies in part the

State's motion.

II.        LEGAL STANDARD.

Summary judgment shall be granted when

> the pleadings, depositions, answers to
> interrogatories, and admissions on file,
> together with the affidavits, if any, show
> that there is no genuine issue as to any
> material fact and that the moving party is
> entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corr.,

383 F.3d 1018, 1024 (9th Cir. 2004); Addisu v. Fred Meyer, Inc.,

198 F.3d 1130, 1134 (9th Cir. 2000).  One of the principal

purposes of summary judgment is to identify and dispose of

factually unsupported claims and defenses.  Celotex Corp. v.

Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that

fails to demonstrate facts to establish what will be an essential

element at trial.  See id. at 323.  A moving party without the

ultimate burden of persuasion at trial--usually, but not always,

the defendant--has both the initial burden of production and the

ultimate burden of persuasion on a motion for summary judgment.

Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102

(9th Cir. 2000).  The burden initially falls on the moving party

to identify for the court "those portions of the materials on

file that it believes demonstrate the absence of any genuine

issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec.

Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial." Porter, 383 F.3d at 1024. "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." California v. Campbell, 319 F.3d 1161, 1166 (9th Cir. 2003). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).

III.     BACKGROUND FACTS.

It is undisputed that Comeaux was born in Mexico City, Mexico, in 1944.  Deposition of Norma C. Comeaux (4/5/2007)[1] ("Comeaux Depo.") at 5; Declaration of Norma C. Comeaux (5/31/2007) ("Comeaux (5/31/2007) Decl'n") ¶ 3.  In 1976, she

---

[1] At the hearing on this matter, the parties informed the court that Comeaux modified her deposition testimony on May 7, 2007.  With respect to the changes, the State argues, "While the language of FRCP 30(e) permits corrections 'in form or substance,' this permission does not properly include changes offered solely to create a material factual dispute in a tactical attempt to evade an unfavorable summary judgment."  Reply at 13. After reviewing the modifications, the court concludes that none of them is material to the issues discussed in this Order.

3

moved to the United States.  Comeaux Depo. at 5-6; Comeaux
(5/31/2007) Decl'n ¶ 4.  She became a naturalized citizen in
1991.  Comeaux (5/31/2007) Decl'n ¶ 4.

In October 1994, the State hired Comeaux as a
substitute custodian.  Her responsibilities included cleaning
classrooms, cafeterias, and bathrooms, stripping and waxing
floors, performing yard work, moving furniture, and replacing
light bulbs.  Comeaux (5/31/2007) Decl'n ¶ 5.  In addition to
working as a substitute custodian, Comeaux worked as a room
cleaner and substitute cafeteria helper at various schools on
Oahu.  See, e.g., Comeaux Depo. at 21-22 (substitute cafeteria
helper at Aliamanu Middle School), 23 (room cleaner at Moanalua
High School).  Comeaux says that she preferred to work as a
substitute custodian because she earned $11.85 per hour for that
job, and only $6.25 per hour as a room cleaner.  See Comeaux
(5/31/2007) Decl'n ¶ 8 (subparagraphs 6, 9, 13, 18-22, 31-33).
The schools Comeaux worked at included Moanalua High School
("MHS"), Aliamanu Middle School, Aliamanu Elementary School, and
Fort Shafter Elementary School.  Id. ¶ 6.

In 1996, Comeaux was assigned to work at MHS.  Id. ¶ 7.
Her supervisor at MHS, Ernesto Mualem ("Mualem"), was the head
custodian.  Id.  Comeaux says that Mualem is Filipino.  Id.
Comeaux alleges that, when she was hired as a substitute
custodian at MHS, she was the only substitute custodian assigned
to that school.  Comeaux Depo. at 46.  Comeaux says that, after

4

she was hired, the State hired other non-Mexican substitute custodians to work at MHS.  Id.; Comeaux (5/31/2007) Decl'n ¶ 8(24-29).  Comeaux identifies her non-Mexican substitute custodian coworkers as:  "Arsenio Jajalla (Filipino), Renee Badayos (Filipino), Romeo Vergara (Filipino), Lureta Alcon (Filipino), Dorina Bamba (Filipino), and Nam Sun Adena (Korean)."[2]  Comeaux (5/31/2007) Decl'n ¶ 8.

        Comeaux says that, from 2000 through the present, she "was treated differently than non-Mexican substitute custodians in the workplace."  Id.  For instance, Comeaux alleges that, from January 2004 through July 2006, she was not offered work as a substitute custodian at MHS, while her non-Mexican coworkers, who were employed at MHS for a shorter time than Comeaux, were given work as substitute custodians.  Id. ¶ 8 (subparagraphs 9-10, 13, 15, 18-22, 24-29, 31-32).  Comeaux says that she was instead offered work as a room cleaner at MHS and worked fewer hours and earned less money than her non-Mexican coworkers.  Id. ¶ 8 (subparagraphs 9, 13, 18-22, 31-32).

        According to Comeaux, on at least six separate occasions, she asked her supervisor at MHS, Mualem, why he was not giving her work as a substitute custodian.  Comeaux Depo. at 112-15.  Comeaux says that Mualem responded by threatening her

---

        [2] In her opposition memorandum, Comeaux refers to Lureta Lagua Alcon as "Lureta Lagua."  Compare SAC ¶ 14, and Ex. I (attached to Comeaux's Concise Statement of Facts) at 2, with Opp. at 12 ¶ 12.

and telling her, "'No complain.  No give problems.  You have job anyway.  We gotta give chance to all the coworker.'"  Id. at 113. Mualem also allegedly told her not to make trouble.  Id. at 114. Comeaux says that, although Mualem did not scream at her, he was "[m]ad" and "[a]ngry" at her.  Id. at 113-14.

Comeaux says she was placed on a three-month rotation as a substitute custodian in early 2004, Comeaux (5/31/2007) Decl'n ¶ 8(6), after a permanent custodian quit his job, Comeaux Depo. at 107.  While on the rotation, Comeaux covered the position for "three months straight," then Jajalla covered the position for the next three months.  Id.  In other words, "He work three months and I work three months."  Id.  According to Comeaux, while she was working the three-month rotation, Mualem asked her "to split my 8 hour work day:  4 hours as a substitute custodian earning $11.85 per hour and 4 hours as a room cleaner earning $6.25 per hour, to allow [Jajalla] to work my 4 hours as a custodian earning $11.85."  Comeaux Decl'n (5/31/2007) ¶ 8(6). Comeaux also says that Jajalla is Mualem's uncle.  Id. ¶ 8(15).

Comeaux further says that, during the time she worked as a substitute cafeteria worker at Aliamanu Elementary School in early 2005, the manager of the cafeteria, Jeff Camero ("Camero"), "gave me a form stating he had 6 months of work for me."  Id. ¶ 8(30); see Comeaux Depo. at 58.  Comeaux says that, less than one month later, Camero asked "for the form back and said he could not give me the work because he was summoned into the

office and asked, 'why did you give her work?'"  Comeaux
(5/31/2007) Decl'n ¶ 8(30).  Comeaux alleges that Camero
subsequently "removed me from the schedule."  Id.

        Comeaux also says that, in January 2006, Mualem asked
her if she "could work as a substitute custodian, 8 hours a day"
at MHS for two weeks.  Id. ¶ 8(33).  Comeaux alleges that she
told Mualem that she was working then at Fort Shafter Elementary
School and had to get permission from that school first.  Comeaux
Depo. at 116.  Comeaux says that, after she got approval from
Fort Shafter Elementary School, Mualem told her, "'I don't know
why, but the office said only give you one week.'"  Comeaux
(5/31/2007) Decl'n ¶ 8(33).  According to Comeaux, "Because
[Mualem] reneged on his promise of 2 weeks work, I elected to
decline his offer."  Id.

        In January 2006, "the promotion list came out and once
again, [Comeaux's] name was not on it."  Id. ¶ 8(34).  At her
deposition, Comeaux clarified that the list was for Fort Shafter
Elementary School and named those substitute custodians who were
being considered for the position of a full-time custodian at
that school.  Comeaux Depo. at 118-19.  Comeaux also testified
that, when she asked why her name was not on the list, she was
told, "'Because you never apply for full-time position.'"  Id. at
120.  At her deposition, Comeaux confirmed that she did not apply
for the full-time position at Fort Shafter Elementary School.
Id. at 119.

According to Comeaux, during 2006, her supervisors at MHS repeatedly asked her when her last day at Aliamanu Elementary School was.  Comeaux (5/31/2007) Decl'n ¶¶ 8(35-37).  She says that her supervisors at Aliamanu Elementary School also asked her whether she was "'still at Aliamanu.'"  Id. ¶ 8(39).  At her deposition, Comeaux clarified that, far from having a malevolent intent, her supervisors were asking her when her last day at Aliamanu Elementary School was because they were trying to schedule her to work at MHS.  Comeaux Depo. at 121, 125-27.

Comeaux further alleges that she submitted a Questionnaire detailing the State's alleged discriminatory acts against her to the Equal Employment Opportunity Commission ("EEOC"), which received the Questionnaire on November 22, 2004.  Ex. C at 1.  Comeaux also says that, on December 21, 2004, she signed a charge of discrimination with the Hawaii Civil Rights Commission ("HCRC") for national origin discrimination.  Ex. 2 (attached to Motion) at 1.  Comeaux alleges that she received a right to sue letter from the EEOC on March 30, 2006.  Ex. D at 1.

On June 22, 2006, Comeaux commenced this action.

IV.     ANALYSIS.

A.   Statute of Limitations.

The State contends that some of Comeaux's claims are time-barred because they fall "outside the limitations period for the EEOC charge of discrimination."  Motion at 11.  Comeaux does not dispute that certain claims are time-barred, but maintains

that even time-barred claims may be admissible at trial "for other limited purposes." Opp. at 3-4. The court grants summary judgment in favor of the State on Comeaux's Title VII claims that are time-barred, without addressing the issue of whether evidence of time-barred claims may be admissible at trial.

Prior to bringing a lawsuit under Title VII, a plaintiff is required to "first file an EEOC complaint against the allegedly discriminatory party before bringing a Title VII suit in federal court." Stache v. Int'l Union of Bricklayers & Allied Craftsmen, AFL-CIO, 852 F.2d 1231, 1233 (9th Cir. 1988). "Generally, a Title VII plaintiff must file an administrative charge with the EEOC within 180 days of the last act of discrimination." MacDonald v. Grace Church Seattle, 457 F.3d 1079, 1082 (9th Cir. 2006) (citing 42 U.S.C. § 2000e-5(e)(1)). "However, the limitations period is extended to 300 days if the plaintiff first institutes proceedings with a 'State or local agency with authority to grant or seek relief from such practice.'" Id. (citing 42 U.S.C. § 2000e-5(e)(1)). The 180- or 300-day period serves as a "judicial statute of limitations . . . , generally barring subsequent suit on discriminatory incidents occurring prior to the" 180- or 300-day period. See Sosa v. Hiraoka, 920 F.2d 1451, 1455 (9th Cir. 1990).

The parties do not dispute that the court should apply the 300-day period to Comeaux's EEOC charge of discrimination, see Motion at 11; Opp. at 9, but they do dispute the date that

Comeaux filed her EEOC charge.  Comeaux argued at the hearing that she filed her EEOC charge on November 22, 2004.  Comeaux filled out a Questionnaire and submitted it to the EEOC, which file-stamped the Questionnaire as received on November 22, 2004. Ex. C at 1.  The State, on the other hand, contends that Comeaux filed her EEOC charge on December 21, 2004.  That date was when Comeaux signed her HCRC charge of discrimination, which includes a notation that it also be presented to the EEOC.  The date of November 22, 2004, is obviously more favorable to Comeaux, and the court applies that filing date.  The record establishes that the EEOC received Comeaux's Questionnaire detailing the State's alleged discriminatory acts against her on November 22, 2004. Any claim of discrimination that occurred prior to January 27, 2004, which marks 300 days before the EEOC charge was filed, is time-barred.  See Sosa, 920 F.2d at 1455.  The court grants summary judgment in favor of the State on all claims that arose before January 27, 2004.

At the hearing on this matter, Comeaux stated that she is suing under Title VII only for allegedly discriminatory conduct that occurred from January through November 2004.  She stated that any allegations involving events that occurred before January 2004 or after November 2004 are not submitted as claims themselves.  At most, they may corroborate or provide context at trial for claims relating to events occurring in the period of January through November 2004.  This court reserves the issue of

what evidence will be received at trial.  This court considers only claims that arose on or after January 27, 2004, and on or before November 30, 2004.

      B.   Comeaux's Remaining Title VII claims.

      With respect to Comeaux's remaining Title VII claims, the State argues that Comeaux cannot "make out a prima facie case" under Title VII, contending that Comeaux did not suffer any adverse employment action, that non-Mexican workers were not similarly situated with Comeaux, and that it "had legitimate, non-discriminatory reasons for" its actions.  Motion at 12-26; Reply at 8-12.  The court grants summary judgment on some of Comeaux's remaining Title VII claims.

      Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . national origin."  42 U.S.C. § 2000e-2(a)(1).  "A person suffers disparate treatment in his employment when he or she is singled out and treated less favorably than others similarly situated on account of a protected characteristic." Cornwell v. Elctra Cent. Credit Union, 439 F.3d 1018, 1028 (9th Cir. 2006).  To prevail on a disparate treatment claim, a plaintiff must "prove that the employer acted with conscious intent to discriminate."  Costa v. Desert Palace, Inc., 299 F.3d 838, 854 (9th Cir. 2002).

When a defendant moves for summary judgment on a Title VII discrimination claim, the plaintiff alleging disparate treatment may respond in one of two ways:

> when responding to a summary judgment motion, the plaintiff is presented with a choice regarding how to establish his or her case. [The plaintiff] may proceed by using the McDonnell Douglas framework, or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated [the defendant].

McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1122 (9th Cir. 2004). "Under the McDonnell Douglas burden shifting framework, a plaintiff must first establish a prima facie case of unlawful discrimination," which requires the plaintiff to show that "(1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably." Id. at 1122 n.16 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973)); Chuang v. Univ. of Cal. Davis, Bd. of Trs., 225 F.3d 1115, 1123 (9th Cir. 2000). "The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the action. If the employer does so, the plaintiff must show that the articulated reason is pretextual." McGinest, 360 F.3d at 1122 n.16.

The State does not dispute that Comeaux belongs to a protected class, but disputes Comeaux's assertions that she

12

suffered adverse employment actions, that similarly situated non-Mexicans were treated more favorably than her, and that the State has no legitimate reason for its actions.  See Motion at 14-26.

1.   <u>Adverse Employment Action.</u>

The Ninth Circuit defines "adverse employment action" broadly.  <u>Fonseca v. Sysco Food Servs. of Ariz.</u>, 374 F.3d 840, 847 (9th Cir. 2004) (citing <u>Ray v. Henderson</u>, 217 F.3d 1234, 1241 (9th Cir. 2000)); <u>Vasquez v. County of Los Angeles</u>, 307 F.3d 884, 890 (9th Cir. 2002).  "There are a wide array of disadvantageous changes in the workplace that constitute adverse actions." <u>Vasquez</u>, 370 F.3d at 890.  The "proper inquiry is to view the action objectively to determine whether it was adverse."  <u>Id.</u> at 891.  The Ninth Circuit has "recognized that an adverse employment action exists where an employer's action negatively affects its employee's compensation."  <u>Fonseca</u>, 374 F.3d at 847.

In her opposition memorandum, Comeaux sets forth four categories of allegedly adverse employment actions:[3]  (1) she was not offered work at MHS at all from June through November 2004, Opp. at 10-11 ¶¶ 2, 4-5; (2) she was asked to give up a three-month rotation, Opp. at 15 ¶ 27; (3) when she asked Mualem why he was not offering her work at MHS as a substitute custodian, he told her, "'do not complain!' 'stop complaining!' 'do not make

---

[3] Comeaux sets forth additional adverse employment actions in her opposition, but they occurred before January 27, 2004, or after November 2004.  As explained above, those claims are no longer before the court.

13

trouble!' and 'you're lucky to have a job,'" Opp. at 12 ¶ 11; and
(4) she was not offered work as a substitute custodian by MHS
from January through November 2004, while non-Mexican workers,
employed as substitute custodians at MHS for a shorter time than
Comeaux, were offered such work during that time.  Opp. at 10-13
¶¶ 1, 3, 6-9, 12-16.  The court addresses each claim of adverse
employment action.

a.  Comeaux's Employment at MHS from
June through November 2004.

Comeaux argues that, from June through November 2004,
she "worked 0 hours at MHS while non-Mexican employees worked
more hours" than she did, and that, from June 18 through July 31,
2004, she "was not called to work at MHS."  Opp. at 10-11 ¶¶ 2
(from "6/21/04-12/3/04"), 4 (from "6/18/04-6/30/04"), 5 (from
"7/1/04-7/31/04").  In these allegations, Comeaux does not
complain about what type of work she performed at MHS, instead
saying that she was not offered any work at MHS.  Comeaux's
allegations are not supported by the evidence, as Comeaux
conceded at her deposition that she worked at MHS during that
time period.  Comeaux Depo. at 77.  The State's payroll records
also confirm that Comeaux was paid for working at MHS between
June and November 2004.  See Ex. 1 (attached to Declaration of
Don Chinen (5/2/2007) ("Chinen Decl'n (5/2/2007)")) at 1-2; see
also Chinen Decl'n (5/2/2007) ¶¶ 7-9, 11, 13, 15, 17-18.  Because
Comeaux's claims that she "worked 0 hours at MHS" and was not

14

offered work at MHS from June through November 2004 are not supported by the evidence in the record, the court grants summary judgment in favor of the State on these claims.

      b.   <u>Comeaux's 3-Month Rotation.</u>

      Comeaux alleges that "Mualem (Filipino) asked [her] to give up her 3 month rotation as a substitute custodian at MHS to his uncle--Substitute Custodian Arsenio Jajalla (Filipino)" and that "[n]on-Mexican employees were not asked to give up their 3 month rotation." Opp. at 15 ¶ 27. In her declaration, Comeaux explains that she was asked to "split my 8 hour work day: 4 hours as a substitute custodian earning $11.85 per hour, and 4 hours as a room cleaner earning $6.25 per hour, to allow Arsenio to work my 4 hours as a custodian earning $11.85 per hour." Comeaux (5/31/2007) Decl'n ¶ 8(6). Notably absent from her declaration is any statement that non-Mexicans "were not asked to give up their 3 month rotation." <u>See</u> <u>generally</u> <u>id.</u> In short, Comeaux points to no evidence supporting her claim that non-Mexican employees were treated more favorably than she was in this regard, even assuming that Comeaux suffered an adverse employment action when she was asked to "split" her rotation. As Comeaux fails to meet her burden of coming forth with any evidence showing that "similarly situated individuals outside [her] protected class were treated more favorably," the court

grants summary judgment in favor of the State on this claim.  See Chuang, 225 F.3d at 1123.

                c.   Mualem's Comment to Comeaux.

          Comeaux alleges that, from January through November 2004, when she asked Mualem why he was not offering her work at MHS as a substitute custodian, he responded by telling her, "'do not complain!' 'stop complaining!' do not make trouble!' and 'you're lucky to have a job.'"  Opp. at 12 ¶ 11; SAC ¶¶ 14(k), (l); Comeaux (5/31/2007) Decl'n ¶¶ 8(11-12, 23).  Even assuming that Mualem's statements to Comeaux constitute adverse employment actions, nowhere does she even allege that Mualem treated non-Mexican workers any differently.  Certainly no evidence in the record indicates that non-Mexican substitute custodians were treated more favorably than Comeaux in this regard.  Again, Comeaux does not meet her burden of showing that similarly situated individuals outside her protected class were treated more favorably than she was.  See Chuang, 225 F.3d at 1123.  Summary judgment is therefore granted in favor of the State on this claim.

                d.   Comeaux's Employment as a Substitute Custodian at MHS from January through November 2004.

          Comeaux asserts that she was not offered work at MHS as a substitute custodian from January through November 2004, while non-Mexican workers employed at MHS for a shorter time than

Comeaux were offered work as substitute custodians.  Opp. at 10-13 ¶¶ 1 (January 2004), 6 (August 2004), 7 (September 2004), 8 (October 2004), 9 (November 2004); see also Opp. at 10 ¶¶ 3 (alleging that Jajalla "was given more hours of work than Plaintiff in 2004"); 12-16 (noting that the non-Mexican workers were hired to work at MHS after Comeaux was hired).  The State points to evidence showing that substitute workers are not guaranteed any work.  Motion at 22; Reply at 3.  Although such evidence may establish that the State was under no obligation to offer any of the substitute custodians work at MHS, it does not address why the State allegedly offered work to only non-Mexican workers as substitute custodians at MHS for eleven months, while allegedly refusing to offer work to Comeaux during that time.

The State also points to evidence showing that Comeaux "worked as a room cleaner at MHS and as a substitute cafeteria helper at Aliamanu school from June to November 2004."  Reply at 5.  At most, this evidence shows that Comeaux was willing to accept other positions at various schools, but it does not address her claim that she was not offered work as a substitute custodian at MHS, while non-Mexican workers were allegedly offered such work.  The State also points to Comeaux's deposition testimony to establish that she "turned down substitute assignments at MHS when other assignments were available at other schools," Motion at 22 (citing Comeaux Depo. at 87), but Comeaux

17

actually testified at her deposition that she would turn down work at other schools so that she could work at MHS.  See Comeaux Depo. at 87.  The State simply fails to point to evidence directly addressing Comeaux's claims that she was treated differently from non-Mexican workers when she was not offered work as a substitute custodian at MHS.

A decision not to offer Comeaux work could negatively affect Comeaux's compensation.  Such a decision therefore could well be an adverse employment action.  See Fonseca, 374 F.3d at 847 ("an adverse employment action exists where an employer's action negatively affects its employee's compensation").  The State does not meet its burden as the movant of establishing that there is no factual dispute about whether there was an adverse employment action.  This court leaves for trial the Title VII claims that Comeaux, unlike her non-Mexican coworkers, was allegedly not offered work at MHS as a substitute custodian from January 27, 2004, through November 30, 2004.

2.   Whether the Other Substitute Custodians at MHS Were "Similarly Situated."

The State posits in its reply memorandum that Comeaux "fails her burden of showing . . . that other substitutes with Filipino or other national origins had similar qualifications." Reply at 8.  The court is not persuaded.

In Title VII discrimination claims, a plaintiff must show that similarly situated individuals outside of her protected

class were treated more favorably than she was.  <u>Chuang</u>, 225 F.3d
at 1123; <u>Rutenschroer v. Starr Seigle Commc'ns, Inc.</u>, No. Civ.
05-00364 ACK/BMK, 2006 WL 1805860, at *6 (D. Haw. June 29, 2006).
"Individuals are similarly situated when they have similar jobs
and display similar conduct." <u>Rutenschroer</u>, 2006 WL 1805860,
at *9 (citing <u>Josephs v. Pac. Bell</u>, 432 F.3d 1006, 1017 (9th Cir.
2005)).  Thus, to prevail on her claim, Comeaux must show that
substitute custodians with a similar work schedule that were not
Mexican received better treatment than she did.  <u>See id.</u> ("For
the purpose of this analysis, Plaintiff must prove that employees
with a similar work schedule that were not black, not African-
American, or not female received better treatment." (citing <u>Leong</u>
<u>v. Potter</u>, 347 F.3d 1117, 1124 (9th Cir. 2003))).

     In her declaration, Comeaux identifies the following
people as non-Mexicans who allegedly received better treatment
than she did at MHS:  "Arsenio Jajalla (Filipino), Renee Badayos
(Filipino), Romeau Vergara (Filipino), Lureta Alcon (Filipino),
Dorina Bamba (Filipino) and Nam Sun Adena (Korean)." Comeaux
(5/31/2007) Decl'n ¶ 8.  She also asserts that they were all
"substitute custodians" at MHS.  <u>Id.</u>  The State agrees that all
substitute custodians are "called as needed to fill in for
regular employees." Galara (5/2/2007) Decl'n ¶ 6.  The State
points to no evidence that Comeaux was somehow not qualified to
work as a substitute custodian.  Because the State does not

dispute that Jajalla, Badayos, Vergara, Alcon, Bamba, and Adena were, like Comeaux, substitute custodians employed at MHS, the court concludes that Comeaux has made a sufficient showing that they were "similarly situated" for purposes of defeating the State's argument on this point in the present motion.  See Rutenschroer, 2006 WL 1805860, at *9 (citing Josephs, 432 F.3d at 1017).

### 3.   The State's Reasons for its Actions.

The State argues, "Even assuming arguendo that Plaintiff can establish a prima facie case, the [State] had legitimate, non-discriminatory reasons for scheduling substitute workers."  Motion at 22.  The State does not provide reasons for each adverse employment action Comeaux allegedly suffered, but argues generally that substitute workers "are called on an as needed basis to fill in for regular employees, and there is no guarantee of work," and that "MHS supervisors worked with Plaintiff to schedule her availability for work."[4]  Motion at 22. The court is unpersuaded that the State has sufficiently set forth legitimate reasons for Comeaux's remaining claims.

The adverse employment actions remaining before the court are based on Comeaux's allegations that, unlike non-Mexican employees, she was not offered work at MHS as a substitute

---

[4] The State also provides allegedly legitimate reasons for some of its actions no longer before the court.  The court does not address those reasons here.

custodian from January 27, 2004, through November 30, 2004.  Opp. at 10-13 ¶¶ 3, 6-9, 12-16.  The State's reason for its actions--*i.e.*, that substitute custodians are not guaranteed work--does not address Comeaux's claim that non-Mexicans were allegedly called to work as substitute custodians at MHS and she was not.  Similarly, the State's assertion that Comeaux "turned down substitute assignments at MHS" and that supervisors worked with her to schedule assignments at MHS do not explain why non-Mexican substitute custodians were allegedly offered work and Comeaux was not.  Indeed, Comeaux's position is that she had no chance to turn down substitute custodian assignments at MHS between January 27, 2004, and November 30, 2004.  Because the State does not meet its burden of providing legitimate reasons for offering work to non-Mexican substitute custodians rather than Comeaux at MHS from January 27, 2004, through November 30, 2004, the court denies summary judgment on these claims.[5]  See McGinest, 360 F.3d at 1122 n.16.

V.      CONCLUSION.

        The court grants in part and denies in part the State's motion for summary judgment on Comeaux's Title VII claims. Comeaux's state law claims, as well as her claims under Title VII that she was not offered work at MHS as a substitute custodian

---

        [5] Because the court concludes that the State has not offered a legitimate reason for its allegedly adverse actions, the court need not and does not address whether Comeaux has established that its reasons are pretextual.

21

from January 27, 2004, through November 30, 2004, remain for
further adjudication.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 27, 2007.



Susan Oki Mollway
United States District Judge

**Comeaux v. State of Hawaii**, Civ. No. 06-00341 SOM/BMK; ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.