IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| NORMA C. COMEAUX, | ) | Civ. No. 06-00341 SOM/BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER DENYING DEFENDANT'S |
| vs. | ) | MOTION FOR RECONSIDERATION OF |
| | ) | THE COURT'S JUNE 27, 2007, |
| STATE OF HAWAII, DEPARTMENT | ) | ORDER |
| OF EDUCATION; JOHN DOES 1-10, | ) | |
| DOE ENTITIES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION
OF THE COURT'S JUNE 27, 2007, ORDER

I.      INTRODUCTION.

          Plaintiff Norma C. Comeaux ("Comeaux"), in her Second
Amended Complaint ("the Complaint") against Defendant State of
Hawaii Department of Education ("the State"), asserts that the
State discriminated against her because of her national origin,
in violation of Title VII of the Civil Rights Act of 1964,
42 U.S.C. § 2000e, et seq., as well as Haw. Rev. Stat. §§ 378-1
and -2.  On June 27, 2007, this court entered an order ("the
Order") granting in part and denying in part the State's motion
for summary judgment on Comeaux's Title VII claims.  The Order
granted summary judgment on all Title VII claims, except for "the
Title VII claims that Comeaux, unlike her non-Mexican coworkers,
was allegedly not offered work at [Moanalua High School ("MHS")]
as a substitute custodian from January 27, 2004, through
November 30, 2004."  Order at 18.

On July 12, 2007, the State filed a motion for reconsideration of the Order, asking the court to grant summary judgment on the remaining Title VII claims.  The State argues that:  (1) "the appropriate timeframe for alleged discrimination is June 18 through November 22, 2004"; (2) "[Comeaux] did not suffer adverse action when she accepted positions at MHS as a regular room cleaner"; and (3) "legitimate non-discriminatory reasons were proffered to explain why [Comeaux] was not hired as a substitute custodian at MHS during the timeframe of alleged discrimination."  Because the State fails to establish that summary judgment on the remaining Title VII claims is appropriate, the court denies the present motion for reconsideration.

II.      LEGAL STANDARD.

A successful motion for reconsideration must accomplish two goals.  First, it must demonstrate some reason that the court should reconsider its prior decision.  White v. Sabatino, 424 F. Supp. 2d 1271, 1274 (D. Haw. 2006).  Second, a motion for reconsideration must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision.  Id.  Courts have established three grounds justifying reconsideration:  (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice.  Id.  The District of

2

Hawaii has implemented these standards in Local Rule 60.1, which states:

> Motions for reconsideration of interlocutory orders may be brought only upon the following grounds:
>
> (a)  Discovery of new material facts not previously available;
>
> (b)  Intervening change in law;
>
> (c)  Manifest error of law or fact.
>
> Motions asserted under Subsection (c) of this rule must be filed not more than ten (10) business days after the court's written order is filed.

"Mere disagreement with a previous order is an insufficient basis for reconsideration." Lawyer's Title Ins. v. Charo's Corp., Civ. No. 06-00429 ACK-BMK, 2007 WL 2106235, at *1 (D. Haw. July 17, 2007) (citing Leong v. Hilton Hotels Corp., 689 F. Supp. 1572 (D. Haw. 1988)). Furthermore, "reconsideration may not be based on evidence and legal arguments that could have been presented at the time of the challenged decision." Id. (citing Kona Enter., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000)). "Whether or not to grant reconsideration is committed to the sound discretion of the court." White, 424 F. Supp. 2d at 1274 (citing Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation, 331 F.3d 1041, 1046 (9th Cir. 2003)).

III.       ANALYSIS.

A.   Timing of the Alleged Discrimination.

The State contends that Comeaux's "EEOC/HCRC Charge of Discrimination," the Complaint, and payroll records "indicate that [she] worked as a substitute custodian at MHS from January through June 2004 and thus was not denied work as a substitute custodian in that period."  Motion at 4.  The court disagrees with the State.

1.   The EEOC Charge and the Complaint.

The State posits that the "EEOC/HCRC Charge of Discrimination indicates a time frame of discrimination of June 1, 2004 through November 22, 2004" and that, in her Complaint, Comeaux "admits [she] worked as a substitute custodian from '2/04-6/18/04.'"  Motion at 4 (internal citation omitted).  The State contends that, because "[a]llegations outside the Complaint or EEOC Charge are barred," the court should rely on the EEOC Charge and the Complaint in finding that "the appropriate timeframe for alleged discrimination is June 18 through November 22, 2004."  Motion at 6.  The court is unpersuaded.

Courts "are required to construe . . . EEOC charges 'with utmost liberality since they are made by those unschooled in the technicalities of formal pleading.'"  Lyons v. England, 307 F.3d 1092, 1104 (9th Cir. 2002); see also B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1100 (9th Cir. 2002) (citing Love v.

Pullman Co., 404 U.S. 522, 527 (1972) ("technicalities are particularly inappropriate in a statutory scheme . . . in which laymen, unassisted by trained lawyers, initiate the process")). Courts must also "keep in mind that complainants filing discrimination charges are acting as laypersons and should not be held to the higher standard of legal pleading by which we would review a civil complaint." B.K.B., 276 F.3d at 1103.

"To establish federal subject matter jurisdiction, a plaintiff is required to exhaust his or her administrative remedies before seeking adjudication of a Title VII claim." Lyons, 307 F.3d at 1103. "Incidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge." Id. at 1104. Stated differently, "Subject matter jurisdiction extends to all claims of discrimination that fall within the scope of the EEOC's actual investigation or an EEOC investigation that could reasonably be expected to grow out of the charge." Vasquez v. County of Los Angeles, 349 F.3d 634, 644 (9th Cir. 2004). In determining whether claims asserted in a complaint are "like or reasonably related" to claims asserted in an EEOC charge, courts "consider 'such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred.'" See id.; see also

B.K.B., 276 F.3d at 1100.  "In addition, the court should consider [a] plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case." B.K.B., 276 F.3d at 1100.

The State points first to Comeaux's EEOC Charge, in which she indicated that the "earliest" date of discrimination was June 1, 2004, and that the "latest" date of discrimination was November 22, 2004.  Ex. 2 (attached to Motion) at 1.  Comeaux also alleged in her EEOC Charge that she was employed at MHS "[s]ince October 1994" and that the State discriminated against her "[t]hroughout my employment."  Id.  Construing the EEOC Charge "with utmost liberality" and acknowledging that "technicalities are particularly inappropriate in a statutory scheme such as Title VII," B.K.B., 276 F.3d at 1100 (internal brackets omitted), the court interprets Comeaux's EEOC Charge as alleging that the State discriminated against her throughout her employment, which she says commenced in 1994.  However, because the court previously concluded that Title VII claims that accrued before January 27, 2004, are time-barred, the court construes the EEOC Charge as asserting discrimination claims that accrued between that date and November 30, 2004, which Comeaux identifies as the outside date of the alleged discrimination that is the subject of this lawsuit.

Moreover, even assuming that the EEOC Charge does not assert claims that are presented in the Complaint, Comeaux is permitted to assert in her Complaint any "claims of discrimination that fall within the scope of the EEOC's actual investigation or an EEOC investigation that could reasonably be expected to grow out of the charge." Vasquez, 349 F.3d at 644. In determining whether Comeaux's claims would fall within such investigations, the court considers several factors, including "the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred." See B.K.B., 276 F.3d at 1100. Because the State has neither discussed the EEOC's investigation nor addressed the foregoing factors, the State does not establish that it is entitled to summary judgment on this ground. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

Regarding Comeaux's Complaint, the State argues that "Plaintiff's Complaint admits Plaintiff worked as a substitute custodian from '2/04-6/18/04.'" Motion at 4. In support of this statement, the State cites paragraph 14(i) of the Complaint. In that paragraph, Comeaux alleges that she "worked as an 'emergency hire' custodian which is a substitute custodian that is employed until a permanent custodian is hired for that position" from February 2004 through June 18, 2004. Complaint ¶ 14(i).

However, nowhere in that paragraph does Comeaux state that she worked as a substitute custodian during that time <u>at MHS.</u> Indeed, Comeaux's remaining Title VII claims are based solely on her allegations that she was not offered work as a substitute custodian <u>at MHS</u>.  That Comeaux may have worked as a substitute custodian at a different school does not establish that summary judgment is warranted on Comeaux's remaining Title VII claims.

2.   <u>Payroll Records.</u>

The State also contends, "Payroll records confirm Plaintiff worked as a substitute custodian at MHS through July of 2004."  Motion at 4.  Because a genuine dispute of fact exists as to whether Comeaux worked as a substitute custodian at MHS during that period, the State is not entitled to summary judgment on this ground.

In his declarations, Don Chinen ("Chinen"), the State's claims supervisor in the Office of Business Services, says that Comeaux "has been employed by Moanalua High School from June 1, 2004 through November 20, 2004."  Declaration of Don Chinen (5/2/2007) ("Chinen (5/2/2007) Decl'n") ¶ 4; Declaration of Don Chinen (6/7/2007) ("Chinen (6/7/2007) Decl'n") ¶ 4.  Chinen also specifies in his declarations the amount of money Comeaux earned each pay period at MHS and Aliamanu Middle School from June 4, 2004, through November 19, 2004.  Chinen (5/2/2007) Decl'n ¶¶ 5-19; Chinen (6/7/2007) Decl'n ¶¶ 5-19.  Attached to each

declaration are payroll records that Chinen relies on in making his declarations.

The payroll records are not easy to analyze, and the State has not provided the court with the information necessary to understand the records.  However, by confirming Chinen's statements regarding the amount of money Comeaux earned from June through November 2004, the court has come to understand that "SCH COD" in the records refers to the "School Code" for each school that Comeaux worked at, and that the School Code for MHS is "218."[1]  Although these assumptions may be incorrect, any mistake in interpreting the payroll records is due to the State's failure to provide the court with information necessary to interpret them.

---

[1] For example, Chinen says that "Comeaux earned $196.88 for work at Moanalua High School for the pay period ending September 3, 2004."  Chinen (5/2/2007) Decl'n ¶ 9; Chinen (6/7/2007) Decl'n ¶ 9.  According to the payroll records, on that date, Comeaux earned $196.88 while working at School Code "218." Ex. 1 (attached to Chinen (5/2/2007) Decl'n) at 2; Ex. 1 (attached to Chinen (6/7/2007) Decl'n) at 3.  Because Chinen says Comeaux earned this money "for work at Moanalua High School," the School Code for MHS appears to be "218."  Indeed, each of Chinen's statements regarding MHS refers to an entry in the payroll records corresponding to School Code "218."  See Chinen (5/2/2007) Decl'n ¶¶ 5-19; Chinen (6/7/2007) Decl'n ¶¶ 5-19.

As another example, Chinen says that "Comeaux earned $283.44 for work at Aliamanu Middle School for the pay period ending September 20, 2004."  Chinen (5/2/2007) Decl'n ¶ 10; Chinen (6/7/2007) Decl'n ¶ 10.  The payroll records confirm that Comeaux was paid that amount of money on that date for work at School Code "705."  Ex. 1 (attached to Chinen (5/2/2007) Decl'n) at 2; Ex. 1 (attached to Chinen (6/7/2007) Decl'n) at 3.  As each of Chinen's statements regarding Aliamanu Middle School refers to School Code "705," the court interprets School Code "705" as referring to Aliamanu Middle School.

In the present motion, the State points to five
statements made in Chinen's June 7, 2007, declaration.  Motion
at 4-6.  Specifically, Chinen says:

> 21.  In February 2004, [Comeaux] was paid for
> work at [MHS] as a substitute custodian at
> the rate of $11.81/hr.
>
> 22.  In March 2004, [Comeaux] was paid for
> work at [MHS] as a substitute custodian at
> the rate of $11.81/hr.
>
> 23.  In April 2004, [Comeaux] was paid for
> work at [MHS] as a substitute custodian at
> the rate of $11.81/hr.
>
> 24.  In May 2004, [Comeaux] was paid for work
> at [MHS] as a substitute custodian at the
> rate of $11.81/hr.
>
> 25.  In June 2004, [Comeaux] was paid for
> work at [MHS] as a substitute custodian at
> the rate of $11.81/hr.

Chinen (6/7/2007) Decl'n ¶¶ 21-25.

Assuming that the court is correct in understanding
that the School Code for MHS is "218," the payroll records do not
support the foregoing statements.  For example, in February and
April 2004, the payroll records indicate that Comeaux earned some
money for working at Aliamanu Middle School, but earned no money
for working at MHS.  See Ex. 1 (attached to Chinen (6/7/2007)
Decl'n) at 4.  The records also show that, in March 2004, Comeaux
earned $6.00 per hour at MHS, contrary to Chinen's statement that
she earned "$11.81/hr."  Chinen's declaration clearly conflicts
with the information in the payroll records as to whether Comeaux
worked as a substitute custodian at MHS during the relevant

period.  The declaration also conflicts with Comeaux's deposition testimony, in which she stated that, from June through November 2004, she worked only as a room cleaner.  Deposition of Norma C. Comeaux (4/5/2007) ("Comeaux Depo.") at 77.  Because the State failed to provide the court with explanations of how to read the payroll records, and because Chinen's statements appear to conflict with the payroll records, the State has not met its burden of establishing that no genuine dispute of material fact exists as to whether Comeaux was employed as a substitute custodian at MHS between January 27, 2004, and November 30, 2004.

     B.   <u>Adverse Employment Action.</u>

The State asserts that "[Comeaux] did not suffer adverse action when she accepted positions at MHS as a regular room cleaner."  Motion at 9.  However, Comeaux has not asserted that accepting a position as a room cleaner was an adverse employment action.  As made clear in the Complaint and in the Order, Comeaux's remaining claims under Title VII are based on her allegation that she was not offered work as a substitute custodian at MHS from January through November 2004.  Because the State is here addressing a claim not asserted by Comeaux, the court rejects this argument.

To the extent the State may be arguing that Comeaux's acceptance of work as a room cleaner provides a legitimate reason for not offering her work as a substitute custodian, that issue is addressed in the next section.

C.   Legitimate Reasons for the State's Actions.

The State contends that "legitimate, non-discriminatory reasons were proffered to explain why [Comeaux] was not hired as a substitute custodian at MHS during the timeframe of alleged discrimination." Motion at 7. Specifically, the State argues, as it did in the underlying motion and at the hearing, that Comeaux's supervisors at MHS attempted to schedule her to work there and that offering substitute work to regular employees "disrupts hiring needs in that the 'shifted' position is left vacant and must be filled." Motion at 7-10. The court is not persuaded that it should grant summary judgment to the State on this issue.

As stated in the Order, a plaintiff asserting discrimination claims under Title VII must "establish a prima facie case of unlawful discrimination," which requires the plaintiff to show that "(1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably." McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1122 n.16 (9th Cir. 2004) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973)); Chuang v. Univ. of Cal. Davis, Bd. of Trs., 225 F.3d 1115, 1123 (9th Cir. 2000). "The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the action." McGinest, 360 F.3d at 1122 n.16.

The State argues that "Plaintiff admits MHS Principal [Darrel Galera ("Galera")] and MHS Head Custodian [Ernesto] Mualem involved [sic] her attempts to schedule her for work at different schools."  Motion at 7.  In support of that assertion, the State points to pages 89 and 90 of Comeaux's deposition testimony.  Motion at 7.  In that portion of her testimony, Comeaux explained that, in 2005, her supervisors at MHS tried to schedule her for work there while she was concurrently working at another school.  Comeaux Depo. at 89-90.  Because the attempts at scheduling Comeaux for work occurred in 2005, the court is not convinced that those efforts provide a justification for the State's alleged discrimination against Comeaux in 2004.

The State also asserts that Comeaux was not offered work as a substitute custodian at MHS from June through November 2004 "because she worked as a regular room cleaner."  Motion at 7-8.  Galera explains that a "regular" employee "works daily," whereas a "substitute" employee "works only 'as needed' when a regular [employee] is unavailable."  Declaration of Darrel Galera (6/7/2007) ("Galera (6/7/2007) Decl'n") ¶ 19.  Galera also says, "Offering a regular classroom cleaner substitute work disrupts the manpower needs at school because the shifted classroom cleaner position is left vacant and must be filled."  Id. ¶ 21.

Although MHS may prefer to give substitute custodial work to employees who are not regular classroom cleaners, Galera's declarations are inconsistent with respect to whether

13

Comeaux was a "regular" or "substitute" classroom cleaner from June through November 2004.  Galera's June 7, 2007, declaration states, "During the time periods in question, [Comeaux] worked at [MHS] as a regular classroom cleaner," but, according to his earlier declaration, "From June 2004 to November 2004 [Comeaux] was working as a substitute classroom cleaner at MHS." Compare Galera (6/7/2007) Decl'n ¶ 20 ("regular classroom cleaner"), with Declaration of Darrel Galera (5/2/2007) ¶ 9 ("substitute classroom cleaner").  Viewing this conflicting evidence in the light most favorable to Comeaux, the court relies on Galera's earlier declaration that Comeaux worked as a substitute, not regular, classroom cleaner from June through November 2004. Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1991) ("On summary judgment, we must draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence"). Additionally, Comeaux testified during her deposition that she worked at MHS as a substitute room cleaner.  Comeaux Depo. at 29. If Comeaux was not a regular classroom cleaner, Galera's explanation that MHS disfavors offering "regular classroom cleaner[s] substitute work" does not justify the State's allegedly discriminatory actions.

14

IV.        <u>CONCLUSION.</u>

          The court denies the State's motion for reconsideration of the court's June 27, 2007, Order.


                    IT IS SO ORDERED.

                    DATED:  Honolulu, Hawaii, August 8, 2007.

                    _____
                    Susan Oki Mollway
                    United States District Judge


**<u>Comeaux v. State of Hawaii, Department of Education</u>, Civ. No. 06-00341 SOM/BMK; ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION OF THE COURT'S JUNE 27, 2007, ORDER.**